JOHNNIE F. EDWARDS AND DR. JOHN D. MESSICK, AND THE AETNA INSURANCE CO. OF HARTFORD, CONNECTICUT v. J. C. HAMILL AND COASTAL REFRIGERATION COMPANY, INC., DOING BUSINESS AS ALL-WEATHER COOLING & HEATING COMPANY.

(Filed 14 January, 1966.)

1. **Negligence § 24a—** **Evidence held to permit inference that acetylene torch caused explosion and employee should have apprehended danger.**

    Evidence that the floors of a house had just been lacquered, that fumes were strong and pervading, that the employee of the heating and cooling contractor was told that he could not walk on the floors for several hours and also not to strike a match "around here," together with evidence competent as against the employee alone that he went under the house and used an acetylene torch on coils connected with the duct work leading to the rooms, *held* sufficient to be submitted to the jury on the question of whether the employee failed to exercise the care of a reasonably prudent man under the circumstances in the face of a danger which he should have apprehended, but as to the heating and cooling contractor, there being no evidence competent against it that the employee did light the acetylene torch, nonsuit was proper.

2. **Trial § 21—**

    On motion to nonsuit, plaintiffs' evidence must be taken as true and considered in the light most favorable to them.

3. **Pleadings § 29—**

    On defendant's motion for nonsuit, inferences of fact may not be drawn from evidentiary recitals in the pleadings unless such recitals have been introduced in evidence.

**4. Evidence § 43—**

> The trial court's findings, supported by evidence, as to the qualifications and field of an expert witness are binding on appeal when supported by competent evidence.

APPEAL by plaintiffs from *Bone, E.J.,* May 24, 1965 Civil Session of PITT.

Plaintiffs, J. F. Edwards as general contractor, and Dr. John D. Messick as owner, instituted this action against J. C. Hamill and his employer, Coastal Refrigeration Company, Inc., doing business as All-Weather Cooling & Heating Company, to recover damages resulting from an explosion and flash fire in the dwelling which Edwards was constructing for Messick. The house was covered by a policy of builder's-risk insurance issued by plaintiff Aetna Insurance Company, which paid $5,349.60 of the loss of $5,764.79.

Plaintiffs allege: On June 14, 1962, the house was nearly completed. That morning, L. H. Whitehurst, a subcontractor of Edwards, applied to the floors the third and final coat of lacquer, a highly volatile, inflammable finishing material. Before he finished, defendant Hamill, the agent and employee of the corporate defendant, which had the air-conditioning contract, came to the house for the purpose of doing some work. He was warned by Whitehurst that the floors had just been varnished and that he must not enter the house for two hours. While waiting to check the thermostat inside the house, Hamill went underneath to make certain connections to the air-conditioning unit, which used the same system of ducts as the heating unit. The ducts were conjoined and opened, without obstruction, into the rooms which had just been lacquered. Notwithstanding that he knew or should have known that flammable vapors from the floor lacquer would probably settle into this ductwork, Hamill, using an acetylene torch, undertook to remove caps from the cooling coils of the air-conditioning unit. As a result, there was a flash fire and an explosion, which did damage in the amount of $5,764.79 to the house.

Defendants admit that, at the time in question, Hamill was the employee of All-Weather Cooling & Heating Company, acting within the course and scope of his employment. They deny, however, that he was in anywise negligent. They aver that Whitshurst asked Hamill not to walk on the floors for 1½ hours but that he negligently failed to warn him that the lacquer had formed a flammable gas which might become ignited by work done beneath the house; that Hamill had no knowledge that such a hazardous condition existed. Defendants allege that negligence of Whitehurst was the sole proximate cause of plaintiffs' damage. Also, in their answer,

defendants alleged a cross action for contribution against White-hurst, but his demurrer to this cross action was sustained. *Edwards v. Hamill*, 262 N.C. 528, 138 S.E. 2d 151.

At the trial, plaintiffs offered evidence which tended to show: On the morning of June 14, 1962, Whitehurst was applying the final coat of lacquer to the floors of the Messick house. As he and his employees were finishing the last rooms, Hamill appeared. He said he wanted to check the thermostat in the hall, and inquired if he could walk on the floors. Whitehurst told him that "it would be at least a couple or three hours before they would be dry enough to walk on." Hamill replied that he had work he could do outside or under the house. Observing that he had a book of matches in his hand, Whitehurst said to him: "Whatever you do, don't strike a match around here." The lacquer which was being applied, according to Whitehurst, "carries a real high odor; if you walk into it or crawl under the house when it's being applied to a floor it will almost burn your eyes out."

When Whitehurst finished his work, he blocked off the front door, locked the back door, and, with his employees, left the premises. The windows had been opened a foot at the top and bottom to create a circulation of air which would stir up the heavy vapors and speed the drying process. Except on a very hot day these fumes settle rather than rise. At that time there was no electric current in the house.

The same ductwork was designed both to heat and to cool the house. Under the house, the main trunkline from the furnace branched off into ducts leading to each room. Copper tubes and coils from the cooling unit were installed in the front of the "one huge duct at the end of the heating system."

After his conversation with Whitehurst, Hamill went under the house. While he was there an explosion occurred. The fire was so hot that trees in the street were burned almost to a crisp; the bay window was blown out into the yard; walls were blackened; part of the woodwork, particularly the floor in the livingroom, was burned over; some of the heat registers were melted.

Hamill told J. L. Hassell, an insurance adjuster for Aetna Insurance Company, that after his conversation with Whitehurst he went under the house to connect the copper line from the air-conditioning compressor to the cooling coils which were already in place inside the ductwork; that each coil came with a cap which had to be removed before the connection could be made; and that while he was using an acetylene torch to remove one of the caps, a terrific explosion occurred. Hassell testified that Hamill told him:

"(T)he atmosphere, it was heavy; it was very humid and apparently the fumes from this floor finishing material may have entered the vents and settled down into the vents and gone to where he was working and became ignited by the acetylene torch which he was using and which was lighted."

These statements of Hamill were admitted only against him and not against his employer, the corporate defendant.

At the close of plaintiffs' evidence the court allowed defendants' motion for nonsuit, and plaintiffs appealed.

*David E. Reid, Jr., for plaintiff appellants.*

*James & Speight by W. W. Speight and William C. Brewer, Jr., for defendant appellees.*

SHARP, J. Plaintiffs' evidence justifies the conclusion that Hamill's use of an acetylene torch under the conditions and circumstances disclosed by the evidence caused the explosion and flash fire which is the subject of this action. *Patton v. Dail,* 252 N.C. 425, 114 S.E. 2d 87. "It was his duty to exercise reasonable care; and that includes reasonable foresight as to harmful consequences of his acts and omissions." *Johnson v. Nicholson,* 159 Cal. App. 2d 395, 407-08, 324 P. 2d 307, 314. The question here is whether plaintiffs' evidence would permit a jury fairly and reasonably to infer that Hamill, in the exercise of proper care, should have apprehended that explosion and fire might follow his use of an acetylene torch in and around the ductwork which led to vents in rooms the floors of which had just been treated with lacquer. Defendants contend that plaintiffs' evidence will not justify such an inference.

On a motion for nonsuit, the court must not only take plaintiffs' evidence as true, but must consider it in the light most favorable to them. *Thomas v. Motor Lines; Motor Lines v. Watson,* 230 N.C. 122, 52 S.E. 2d 377. Thus considered, the evidence reveals that when Whitehurst told Hamill he could not walk on the floors for several hours, he also said to him, "Whatever you do, don't strike a match around here." When this warning was given both men were in the kitchen and, at that time, the floors of the den and livingroom were being treated. Whitehurst said, "The odor was about to get me myself. That type of lacquer carries a higher odor than gasoline." He had described the area of danger as being "around here" which, although indefinite, would surely include the space beneath the house. If a lighted match were dangerous "around here," *a fortiori,* an acetylene torch which produced heat enough to melt solder! A workman competent to install air conditioning and

to use an acetylene torch presumably was not totally without knowledge and experience in other aspects of home construction. The average person knows that floor lacquer, varnish, and shellac are all highly volatile, flammable liquids which should be kept away from an open flame. Hamill's statement to the insurance adjuster is sufficient to establish that he was using the torch when the explosion occurred. Whether he used it in the face of a danger which he should have apprehended, and thus failed to exercise the care of the reasonably prudent man under the circumstances, was a question for the jury. Clearly. therefore, the nonsuit as to Hamill was erroneous.

The evidence of Hamill's statement to. the insurance adjuster, however, was not admitted as against his employer, the corporate defendant. Defendants filed a joint answer, in paragraph 7 of which it is admitted that, at the time Hamill went under the house with the acetylene torch, he was an employee "acting in the course and scope of his employment by the defendant All-Weather Cooling & Heating Company." This admission eliminated the issue of agency from the case. But there is no admission in the answer that Hamill *ever lighted the torch.* If paragraph 7 contains recitals not responsive to specific allegations which might justify an inference that Hamill did light the torch, these were not introduced in evidence, and, for that reason, cannot be considered in passing upon the motion for nonsuit. See *Leathers v. Tobacco Co.,* 144 N.C. 330, 340, 57 S.E. 11, 14; *Smith v. Smith,* 106 N.C. 498, 504, 11 S.E. 188, 189; Stansbury, N. C. Evidence § 177 (2d Ed. 1963).

The absence of evidence *competent against All-Weather Cooling & Heating Company* on the crucial question of what caused the explosion requires that the nonsuit as to it be sustained. *Branch v. Dempsey,* 265 N.C. 733, 145 S.E. 2d 395. No doubt this evidence could have been—and yet may be—obtained by an adverse examination of Hamill.

Since the case goes back for a new trial as to Hamill, we take notice of plaintiffs' assignments of error based upon their exceptions to the refusal of the court to find that the Chief of the Greenville Fire Department was an expert in the detection of causes of fires and explosions. His training and professional knowledge failed to satisfy the court of his competency to testify as such an expert and the court concluded that it could only find him to be "an expert fireman." The judge's conclusion was a factual one which is sustained by competent evidence. Under these circumstances this Court cannot review his findings. *Blue v. R. R.,* 117 N.C. 644, 23 S.E. 275; Stansbury, N. C. Evidence § 133 (2d Ed. 1963).

Reversed in part;
Affirmed in part.