STATE OF NORTH CAROLINA v. JIMMY LEE WALKER

No. 398A86

(Filed 2 June 1987)

**Criminal Law §§ 128.1, 102.5 — improper questions — objections sustained and jury instructed — no mistrial**

    The trial court did not err in a murder prosecution by denying defendant's motion for a mistrial, even though the prosecutor's questions had portrayed defendant by innuendo as a drug dealer with wide-ranging illicit associations, because the trial court had promptly sustained defendant's objection and instructed the jury that it was not to consider the implications of the prosecutor's questions; although the prosecutor persisted in the challenged line of questioning, he did not do so in nearly so persistent or damaging a manner as the prosecutor in *State v. Phillips*, 240 N.C. 516; and evidence of defendant's drug use and purchase of drugs had already been introduced during the State's case in chief without objection from defendant.

APPEAL by the defendant from judgment entered by *Long, J.*, at the 24 February 1986 Criminal Session of Superior Court, RUTHERFORD County. The defendant was indicted for first degree murder. The jury found him guilty under a felony-murder theory. He was sentenced to life imprisonment and appealed to the Supreme Court as a matter of right. Heard in the Supreme Court 13 April 1987.

*Lacy H. Thornburg, Attorney General, by Barry S. McNeill, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Louis D. Bilionis, Assistant Appellate Defender, for the defendant appellant.*

MITCHELL, Justice.

The defendant contends that the trial court erred by denying his motions for a mistrial because, during cross-examination of the defendant's wife, the prosecutor "persistently injected incompetent and prejudicial innuendo into the trial." We disagree and hold that the trial court did not err.

The State's evidence tended to show that the defendant, Jimmy Lee Walker, visited Tony Philbeck several times a week, sometimes with a mutual acquaintance, Lisa Splawn, to use co-

caine. Usually, the defendant had the cocaine with him. When he did not, he would give Philbeck the necessary money and have Philbeck purchase cocaine for him.

Jerry Lee White, an automobile parts salesman and admitted drug dealer, testified that he owned a .380 caliber semi-automatic pistol, but had arranged for it to be pawned on 24 October 1984. Wishing to retrieve the pistol, White asked to borrow the necessary money from the defendant on 3 November 1984. White had been "pretty close friends" with the defendant for about fifteen years. The defendant told White he would pick up the gun and hold it until White could pay him. The defendant claimed the gun on 3 November 1984 and bought fifty rounds of Federal .380 caliber ammunition.

The defendant and his wife were in a bad financial situation. He had lamented in late October that he had spent all his money on cocaine, was "hurting" for money, and had made unsuccessful attempts to borrow money. He was thinking about selling a trailer and a couple of his houses. On 6 November 1984, his wife was denied a $3,000 consumer loan from a local bank. The bank informed him of its decision that afternoon.

That night, 6 November 1984, the defendant came to Philbeck's house around 8:00 or 8:30 p.m. He said he "needed money real bad" because he was "wanting to get high and was behind on his payments and all." The defendant believed that his automobile body repair shop business was down because people thought he was informing on drug users.

About 9:30 p.m., the defendant told Philbeck he wanted to "check something out" and proceeded to drive by Alvin Walker's home. A car was in Alvin's driveway. The defendant told Philbeck that, when the car left the residence, he wanted Philbeck to drive and let him out at Alvin's so the defendant could rob him. The defendant was Alvin Walker's cousin and knew that he always carried a large amount of money. The defendant was carrying a .380 caliber handgun.

Philbeck became scared and told the defendant to take him home so he could go to work. The defendant took Philbeck home around 10:00 or 10:30 p.m.

On Tuesday, 6 November 1984, Alvin Walker's son, Mark Walker, got off work and went to his father's house to watch the election returns on television. Larry Walker, Alvin's brother, also came by around 10:30 p.m. for about fifteen minutes. Alvin was alone when Mark left around 11:30 p.m.

Alvin always carried a billfold full of cash. Larry estimated Alvin's billfold was one and one-half inches to two inches thick and contained over 100 green bills. Larry and Mark both saw Alvin's billfold and saw him put it in his pocket on the night of 6 November 1984.

The defendant knocked on Alvin's door around 1:00 or 1:30 a.m. on 7 November 1984. He shot Alvin, but Alvin kept coming toward him, so he shot him again. The defendant stole Alvin's billfold and went home. The defendant then took his son's car and drove to a bridge where he threw away the gun he had used to kill Alvin Walker. The defendant twice told Philbeck what he had done.

Alvin Walker was found dead, lying face down on his front porch, on 7 November 1984. His billfold was gone. He had three bullet wounds: to the right shoulder, the right forearm, and the center of the chest. He also had a laceration on the top of his head over a small skull fracture. The wound to the right forearm possibly was inflicted by the same bullet that struck his chest. He had been shot at close range by a .380 caliber gun. The bullets were manufactured by Federal Firearms.

The defendant did not testify, but offered an alibi defense. His wife and son said that he was at home at 10:30 p.m. on the night Alvin Walker was killed and did not go out again on that night. The defendant also offered testimony which disputed Philbeck's statement that the defendant had told him about the murder by telephone after 8:30 a.m. and again in person around 9:30 a.m. on 7 November 1984.

During the defendant's presentation of evidence at trial, the prosecutor cross-examined the defendant's wife as follows:

Q. Did you know of his dealings in the marijuana or cocaine business?

MR. HARRIS: OBJECTION.

THE COURT: SUSTAINED. Members of the jury, you're not to consider the implications of that question.

Q. Was he dealing in the marijuana or cocaine business— . . . [objection sustained].

THE COURT: Just a minute. Motion [to strike] ALLOWED. Members of the jury, you're not to consider the implications of the question of the District Attorney.

The prosecutor then asked the defendant's wife whether she knew if the defendant associated with Greg Burleson, Doc Lamb, Troy Brown, or Danny Roach. The defendant's objections were sustained. The defendant's motion for mistrial was denied, and curative instructions were given. The prosecutor continued, asking if the wife knew Levi Arrowwood or of her husband's association with Lisa Splawn, Tammy Chapman, Connie Bradley, or Patty Beard. The defendant's objection was sustained, but his motion for mistrial was denied. The witness each time denied knowledge.

The defendant contends that the trial court should have granted his motions for a mistrial, because the prosecutor's questions portrayed him by innuendo as a drug dealer with wide-ranging illicit associations. He asserts that the trial court's rulings were too mild when compared to the damage done. He suggests that the trial court should have intervened more forcefully by forbidding the prosecutor from further improper cross-examination or by giving the jury a stronger admonition and instructing them that there was no evidence the defendant was a drug dealer.

The defendant places great reliance upon State v. Phillips, 240 N.C. 516, 82 S.E. 2d 762 (1954), in which we ordered a new trial because of improper conduct by the prosecutor who purposely and persistently asked improper questions of the defendant and his witnesses which asserted in advance the untruth of their denials. In Phillips, the trial court overruled the defendant's objections to many of the improper questions. Here, the trial court sustained the defendant's objections as to all such questions and gave curative instructions to the jury. Additionally, the defendant in Phillips specifically requested the trial court put an end to the line of improper questioning on the ground that it was tanta-

mount to the prosecutor giving testimony. Here, the defendant made no such request for further curative instructions or additional remedial action. *See State v. Blackstock*, 314 N.C. 232, 245, 333 S.E. 2d 245, 253 (1985).

The trial court properly denied the defendant's motions for mistrial in the present case, especially since it had promptly sustained the defendant's objections and instructed the jury that it was not to consider the implications of the prosecutor's questions. The law assumes that jurors will follow their instructions and act in a rational fashion. *State v. McCraw*, 300 N.C. 610, 268 S.E. 2d 173 (1980). When a court withdraws incompetent evidence and instructs the jury not to consider it, any prejudice is ordinarily cured. *State v. Smith*, 301 N.C. 695, 697, 272 S.E. 2d 852, 855 (1981). Because such steps had been taken in the present case, the trial court's refusal to grant a mistrial was not an abuse of discretion. *State v. Primes*, 314 N.C. 202, 215, 333 S.E. 2d 278, 286 (1985). *Accord, State v. Bright*, 301 N.C. 243, 258, 271 S.E. 2d 368, 378 (1980).

Although the prosecutor persisted in the challenged line of questioning after several objections had been sustained, he did not do so in nearly so persistent or damaging a manner as the prosecutor in *Phillips*. Evidence of the defendant's drug use and purchases of drugs had already been introduced during the State's case-in-chief without objection from the defendant. The questions complained of here did not result in "substantial and irreparable prejudice," considering the weight of the evidence against the defendant. *See State v. Smith*, 301 N.C. 695, 272 S.E. 2d 852 (1981); N.C.G.S. § 15A-1061 (1983). Therefore, the trial court properly denied the defendant's motions for a mistrial.

The defendant received a trial free from error.

No error.