STATE OF NORTH CAROLINA v. MICHAEL GRANT DIAL, Appellant

No. COA94-1368

(Filed 7 May 1996)

1. **Criminal Law § 59 (NCI4th); Judgments § 205 (NCI4th)— jurisdiction in North Carolina—special verdict at first trial—relitigation of issue precluded**

	The trial court's acceptance of the jury's special verdict finding that North Carolina had jurisdiction at defendant's first murder trial, prior to declaring a mistrial by reason of the jury's inability to agree upon the issue of guilt or innocence, precluded defendant from relitigating jurisdiction at his second trial, since the parties were the same; the issue as to jurisdiction was the same; the issue was raised and actually litigated in the prior action; jurisdiction was material and relevant to the disposition of the prior action; and the determination as to jurisdiction was necessary and essential to the resulting judgment.

	**Am Jur 2d, Criminal Law § 336; Judgments §§ 539-552.**

	**Modern status of res judicata in criminal cases. 9 ALR3d 203.**

STATE v. DIAL

[122 N.C. App. 298 (1996)]

2. **Criminal Law § 266 (NCI4th)— medical examiner's testimony—difference between first and second trials—continuance properly denied**

The trial court did not err in denying defendant's motion for continuance made on the ground that he prepared for trial based on the assumption that the State's medical examiner would testify as he had at the first trial with regard to time of death, and that his alibi evidence was affected because he was forced to account for his whereabouts for an additional twelve hours when the medical examiner testified differently at the second trial, since the medical examiner's testimony at the second trial was consistent with his opinions expressed in the autopsy report and death certificate, both of which were available to defendant in advance of his first trial.

**Am Jur 2d, Continuance §§ 100, 101, 103.**

3. **Evidence and Witnesses § 1693 (NCI4th)— photographs of murder victim—admissibility**

The trial court did not err in admitting into evidence photographs of the victim's body taken during the autopsy, since they were illustrative of the degree, nature, and circumstances of the amputation of the victim's head and hands and the skin slippage of her body, a fact relevant to a determination of how long the victim had been dead.

**Am Jur 2d, Evidence § 974; Homicide §§ 417-419.**

**Admissibility of photograph of corpse in prosecution for homicide or civil action for causing death. 73 ALR2d 769.**

4. **Criminal Law § 530 (NCI4th)— news articles about trial—mistrial properly denied**

The trial court did not err in denying defendant's motion for a mistrial due to a news article which appeared during the trial which reported that defendant had rejected a plea bargain and in denying his alternative requests that the jury be polled to determine whether any juror had been exposed to this or other articles which were published during the course of the trial, since the trial court properly admonished the jury throughout the trial to avoid exposure to media accounts of the trial, and there was no hint either in the record or in defendant's argument that the court's instructions were not followed.

**Am Jur 2d, Trial §§ 1641-1644, 1728, 1729.**

**Juror's reading of newspaper account of trial in state criminal case during its progress as ground for mistrial, new trial, or reversal. 46 ALR4th 11.**

**Juror's reading of newspaper account of trial in federal criminal case during its progress as ground for mistrial, new trial, or reversal. 85 ALR Fed. 13.**

5. **Criminal Law § 557 (NCI4th)— reference to defendant's criminal record—defendant not prejudiced**

The trial court did not err in denying defendant's motion for a mistrial made after his supervisor testified that defendant had told him he had a record, since the trial court acted promptly and properly in instructing the jurors to disregard the supervisor's statement if they had heard it, and the court's refusal to grant a mistrial or to individually poll jurors was not an abuse of discretion.

**Am Jur 2d, Trial § 1746.**

6. **Evidence and Witnesses § 154 (NCI4th)— telephone conversation with defendant—identity of voice proved by circumstantial evidence**

Circumstantial evidence with regard to the identity of defendant's voice was sufficient to permit a police sergeant to testify concerning statements allegedly made by defendant during a telephone conversation with the sergeant.

**Am Jur 2d, Evidence § 580.**

**Sufficiency of identity of participants as prerequisite to admissibility of telephone conversation in evidence. 79 ALR3d 79.**

7. **Evidence and Witnesses § 2135 (NCI4th)— testimony as to ocean currents—admissibility to prove connection with crime**

A Coast Guard officer's testimony as to ocean currents was relevant to show a connection between defendant and the crime in that an inference could be drawn therefrom that the victim's body had drifted from an area with which defendant was familiar, where he and the victim had previously camped and fished, and

STATE v. DIAL

[122 N.C. App. 298 (1996)]

where he had stated an intention to take the victim over the July 4th holiday; furthermore, by offering the testimony, the State did not open the door to his relitigating the issue of jurisdiction.

**Am Jur 2d, Evidence §§ 307-312.**

**Admissibility of nonexpert opinion testimony as to weather conditions. 56 ALR3d 575.**

8. **Evidence and Witnesses § 2047 (NCI4th)— defendant's co-worker's extrajudicial statements—rational basis— admissibility**

The trial court in a murder prosecution did not err in allowing testimony of defendant's co-worker that, after seeing a news report that an unidentified body bearing a rose tatoo had washed onto the beach at Nags Head, he said to his girlfriend, "Mike, he killed his girlfriend," and that he told his employer that he did not want to work with defendant because he thought defendant had killed his girlfriend, since evidence of defendant's earlier threats against his girlfriend which were communicated to the co-worker, evidence that the witness knew of fights between defendant and the victim, and evidence that the witness knew of the victim's tatoo showed that there was a rational basis for the witness's testimony and that by his conduct the witness took defendant's statements seriously. N.C.G.S. § 8C-1, Rule 701.

**Am Jur 2d, Expert and Opinion Evidence §§ 26-31.**

9. **Evidence and Witnesses § 165 (NCI4th)— evidence of threats—no offer to prove defendant's character—admissibility to prove motive**

The trial court in a homicide prosecution did not err in denying defendant's motion *in limine* to preclude a witness's testimony that defendant had told him that "if he were pulled over, that he would take out whoever pulled him over—with him" and that "something had gone south and that he had to off two people," since the statements were not offered to prove that defendant was a person of bad character but were instead admissible as tending to establish a motive for killing the victim and his intent to elude capture, and went to the issue of premeditation and deliberation.

**Am Jur 2d, Evidence § 425.**

Appeal by defendant from judgment entered 1 March 1994 by Judge J. Richard Parker in Dare County Superior Court. Heard in the Court of Appeals 26 September 1995.

*Attorney General Michael F. Easley, by Assistant Attorney General John J. Aldridge, III, for the State.*

*The Law Firm of Gladden & Rose, by John B. Gladden and Randy L. Jones, for defendant-appellant.*

MARTIN, John C., Judge.

Defendant appeals from a judgment imposing a sentence of life imprisonment upon his conviction of second degree murder. The procedural and evidentiary history of the case is as follows:

On 12 August 1991, defendant, a Virginia resident, was indicted for first degree murder in connection with the death of Brenda Dozier whose body washed onto the beach of Nags Head, North Carolina on 4 July 1991. Defendant entered a plea of not guilty and moved to dismiss for lack of jurisdiction. At defendant's first trial in Dare County Superior Court, an issue was submitted to the jury of whether North Carolina had jurisdiction, as well as the issue of defendant's guilt or innocence of the offense. On 28 April 1993, the jury returned a special verdict finding that North Carolina had jurisdiction; however, the jury was unable to agree upon the issue of defendant's guilt or innocence. The trial court accepted the jury's special verdict finding jurisdiction and declared a mistrial as to the issue of defendant's guilt or innocence.

Defendant subsequently filed a new motion to dismiss the indictment for lack of jurisdiction and a motion to set aside the special verdict finding jurisdiction. The trial court ruled that the special verdict had determined the issue of jurisdiction and denied the motions. The case was tried a second time in the Dare County Superior Court at the 14 February 1994 criminal session.

At the second trial, the State's evidence tended to show that the victim's head and hands had been amputated from her body. Dr. Lawrence Stanley Harris, a forensic pathologist, determined that the amputation had occurred after death and had been performed with one heavy blade and one smaller, sharper blade. Because of the amputation, the cause of death could not be determined. Dr. Harris testified that the body could have been placed in the ocean as early as 1 July or possibly as late as 3 July.

Defendant and the victim had lived together in an apartment prior to her disappearance. They had a stormy relationship, often engaging in arguments and physical fights. Witnesses testified that defendant had become particularly upset with the victim after she had an abortion.

Around 11:00 p.m. on 1 July 1991, defendant, the victim and her brother, Chris Jackson, left a bar near Norfolk, Va. in defendant's truck. After taking Jackson to his house, defendant and the victim headed to their apartment. Defendant told police that he and the victim had an argument on the way, and he stopped the truck. Defendant claimed that he last saw the victim when she got out and walked away from the truck.

Defendant told police that he went on to the apartment and waited. When the victim did not come home, he called Jackson but was told she did not go to his home. Defendant said that when he left for work at 6:00 a.m. the victim still had not arrived at the apartment, but when he returned around 3:30 p.m. he saw clothes she had worn the night before so he knew she had returned. However, defendant said he did not see or talk to the victim again.

Defendant worked the next few days and resided at his parents' home during this time. Lorraine Rudacil, a friend of defendant, and Charles Dabney, a co-worker of defendant, both testified that defendant had told them he planned to take the victim on a fishing trip to the North Carolina coast during the 4 July holiday.

Defendant was known to keep his truck in immaculate condition, but on 5 July 1991, the day after the victim's body was discovered, defendant drove his truck to an area south of Richmond, Virginia, set fire to the truck, and then hitchhiked back to Virginia Beach. Witnesses including Rudacil, Dabney, John McNeese, another friend of defendant, William Horton, defendant's supervisor, and Douglas Campbell, another co-worker of defendant, testified that defendant told them the victim had bled in the truck from an accidental head wound suffered after an argument between the couple. Rudacil and Horton testified that defendant told them the accident happened the night that the victim disappeared. Campbell testified that defendant said the accident happened a couple of weeks earlier.

Defendant appeared nervous and agitated at work on the days after Ms. Dozier's disappearance but before her body was found. Dabney testified about statements defendant had made earlier that he

wished the victim were dead. Campbell testified that on 1 July defendant had stated that if he and Ms. Dozier did not get away from each other he was going to "put chains on her and carry her out in one of the tributaries and chain her to the bottom of the ocean." Defendant later asked Campbell not to say anything about his threats to kill Ms. Dozier. Robert Hart, another of defendant's friends, testified that on 4 July, the night the victim's identity became public knowledge, he was outside a club talking with defendant next to defendant's truck. Hart stated that he noticed a gasoline odor coming from the cab of the truck, and when he mentioned it defendant indicated he was in some trouble and that "if he were pulled over he would take out whoever pulled him over—with him." He testified that defendant told him that "something had gone south and that he had to off two people." Hart also stated that a couple of days later defendant told him "basically that he didn't want to see anything happen to me so I should not say anything about what I was told."

Defendant's motion to dismiss the charge of first degree murder at the close of the State's evidence was denied. Defendant offered evidence tending to show he spent the night of 1 July 1991 at the home of his parents, and that he and Ms. Dozier were not seen together thereafter. The clothes Ms. Dozier wore on the night of her disappearance were later found in the laundry at her apartment. Defendant offered alibi evidence for most of the time between the victim's disappearance and the discovery of her body. No evidence of foul play was discovered in the burned truck; there was no direct evidence that defendant entered North Carolina during the time in question; and defendant made no mention of Ms. Dozier in his statements that "something had gone south" and that he had "had to off two people," nor did he indicate when or where the events he was referring to had occurred.

At the close of all the evidence, defendant renewed his motion to dismiss the charge of first degree murder. The motion was denied. The jury convicted defendant of second degree murder.

In his appellant's brief, defendant has presented arguments in support of the questions raised by twenty-three of the twenty-seven assignments of error contained in the record on appeal. The remaining four assignments of error are deemed abandoned. N.C. App. R. 28(a), 28(b)(5). We have carefully reviewed his arguments and find no prejudicial error in his trial.

**[1]** By his first two assignments of error, defendant contends the trial court erred by denying his motions made prior to his second trial, (1) to dismiss the indictment for lack of jurisdiction and (2) to set aside the special verdict returned by the jury at the first trial finding that North Carolina had jurisdiction. Defendant does not argue in this Court that the evidence at his first trial was insufficient to support the jury's special verdict as to jurisdiction. Rather, he argues that the special verdict was not binding at his second trial so that the State should have been required to prove, beyond a reasonable doubt, the existence of jurisdiction to the same jury deciding his guilt or innocence at his second trial. We reject his argument.

Where a criminal defendant challenges the theory upon which the State claims jurisdiction to try him, the question is a legal question for the court; however, where the defendant challenges the facts upon which jurisdiction is claimed, the question is one for the jury. *State v. Darroch*, 305 N.C. 196, 287 S.E.2d 856, *cert. denied*, 457 U.S. 1138, 73 L. Ed. 2d 1356 (1982). Where the *locus* of the offense is challenged, the State must prove beyond a reasonable doubt that the crime occurred in North Carolina. *State v. Rick*, 342 N.C. 91, 463 S.E.2d 182 (1995); *State v. Batdorf*, 293 N.C. 486, 238 S.E.2d 497 (1977). Here, by his motion to dismiss, defendant alleged the State had insufficient evidence to show the murder of Brenda Dozier was committed in North Carolina, a factual challenge to jurisdiction.

The question before us, then, is whether the trial court's acceptance of the jury's special verdict finding that North Carolina has jurisdiction at defendant's first trial, prior to declaring a mistrial by reason of the jury's inability to agree upon the issue of guilt or innocence, precludes defendant from relitigating jurisdiction at his second trial. The question is apparently one of first impression. We believe, however, that it is resolved by application of the settled principles of *res judicata* and collateral estoppel.

"*Res judicata* deals with the effect of a former judgment in favor of a party upon a subsequent attempt by the other party to relitigate the same cause of action." *King v. Grindstaff*, 284 N.C. 348, 355, 200 S.E.2d 799, 804 (1973). "[W]hen a fact has been agreed on, or decided in a court of record, neither of the parties shall be allowed to call it in question, and have it tried over again at any time thereafter, so long as the judgment or decree stands unreversed." *Humphrey v. Faison*, 247 N.C. 127, 133, 100 S.E.2d 524, 529 (1957) (quoting *Armfield v. Moore*, 44 N.C. 157, 160). Similarly, collateral estoppel precludes par-

ties and those in privity with them "from retrying fully litigated issues that were decided in any prior determination and were necessary to the prior determination." *King*, 284 N.C. at 356, 200 S.E.2d at 805 (citations omitted). The doctrines of *res judicata* and collateral estoppel apply to criminal, as well as, civil proceedings, *Sealfon v. United States*, 332 U.S. 575, 92 L. Ed. 180 (1948), and their application against a criminal defendant does not violate the defendant's rights to confront the State's witnesses or to a jury determination of all facts. *United States v. Colacurcio*, 514 F. 2d 1 (9th Cir. 1975).

In the present case, all the requirements for precluding relitigation of the jurisdiction issue have been met: (1) the parties are the same; (2) the issue as to jurisdiction is the same; (3) the issue was raised and actually litigated in the prior action; (4) jurisdiction was material and relevant to the disposition of the prior action; and (5) the determination as to jurisdiction was necessary and essential to the resulting judgment. *See King*, 284 N.C. at 358, 200 S.E.2d at 806. Moreover, our Supreme Court has similarly applied the doctrine of collateral estoppel to preclude the defendant in a civil paternity action from relitigating the issue of paternity which had been determined against him in a prior criminal action. *State ex rel Lewis v. Lewis*, 311 N.C. 727, 319 S.E.2d 145 (1984). *See State v. Ellis*, 262 N.C. 446, 137 S.E.2d 840 (1964) (error as to nonsupport issue did not entitle defendant to new trial on paternity issue); *State v. O'Neal*, 67 N.C. App. 65, 312 S.E.2d 493 (1984) (where special verdict form containing seven issues submitted to jury, new trial not required upon six issues unaffected by error as to seventh issue). Defendant has offered no other argument in support of his motion to set aside the special verdict. Thus, we hold that the court's acceptance of that special verdict of the jury at his first trial finding that North Carolina has jurisdiction precludes defendant from relitigating the issue of jurisdiction at his second trial. Defendant's first and second assignments of error are overruled.

[2] By his next argument, defendant contends the trial court erred in denying his motion to continue the trial. Defendant contends that he prepared for trial based on the assumption that Dr. Harris, the State's medical examiner, would testify as he had at the first trial, that in his opinion Ms. Dozier's death had occurred within thirty-six hours of the time when her body was found on the morning of 4 July 1991, though he could not be conclusive about the time of death. Defendant contends that he first became aware that Dr. Harris would testify Ms. Dozier's death could have occurred in the early morning hours of 2

July less than three days before the second trial. Accordingly, defendant contends his alibi evidence was affected because he was forced to account for his whereabouts for an additional twelve hours. Moreover, he argues that he needed additional time to retain his own expert forensic pathologist.

"A motion for continuance is ordinarily addressed to the sound discretion of the trial court, and its ruling thereon is not subject to review absent an abuse of discretion." *State v. Baldwin,* 276 N.C. 690, 697, 174 S.E.2d 526, 531 (1970). We find no abuse of discretion in the denial of defendant's motion. The autopsy report and death certificate, which were available to defendant in advance of the first trial, both contained the medical examiner's opinion that the victim's death occurred at an unknown time on or about 2 July or 3 July 1991. Dr. Harris' testimony at defendant's second trial is consistent with his opinions expressed in those documents, and is not necessarily inconsistent with his testimony at the first trial that he could not be conclusive about the time of death. This assignment of error is overruled.

In a related assignment of error, defendant contends the trial court erred in denying his motion *in limine* to preclude Dr. Harris from giving testimony with respect to the time, manner or cause of Ms. Dozier's death, or the time when her body was placed in the ocean. He contends these matters were outside the witness' area of expertise. "[E]xpert testimony is properly admissible when such testimony can assist the jury in drawing certain inferences from the facts because the expert is better qualified." *State v. Wise,* 326 N.C. 421, 390 S.E.2d 142, *cert. denied,* 498 U.S. 853, 112 L. Ed. 2d 113 (1990). A trial court has wide latitude and discretion in making this determination, *id.,* and its findings as to the witness' qualifications and field are binding on appeal when supported by competent evidence. *Edwards v. Hamill,* 266 N.C. 304, 145 S.E.2d 884 (1966). The evidentiary record in the present case supports the trial court's acceptance of Dr. Harris as an expert medical witness specializing in forensic pathology, and his testimony could assist the jury in determining the time, manner and cause of Ms. Dozier's death and when her body was placed in the ocean. Defendant's assignment of error is, therefore, overruled.

[3] Defendant also assigns error to the admission into evidence of photographs of the victim's body. Defendant argues that the photographs were not relevant and were highly prejudicial since the medical examiner was unable to determine the cause of death. "Photographs of a homicide victim may be introduced even if they are

gory, gruesome, horrible or revolting, so long as they are used for illustrative purposes and so long as their excessive or repetitious use is not aimed solely at arousing the passions of the jury." *State v. Hennis*, 323 N.C. 279, 284, 372 S.E.2d 523, 526 (1988). "[P]hotographs taken during an autopsy are generally deemed admissible." *State v. House*, 340 N.C. 187, 191, 456 S.E.2d 292, 294 (1995). Four black and white photographs taken during the autopsy were admitted into evidence and were used to illustrate the degree, nature and circumstances of the amputation of the victim's head and hands. In addition, the photographs were used to illustrate skin slippage on the victim's body, relevant to a determination of how long the victim had been dead. This assignment of error is overruled.

[4] In three separate assignments of error defendant argues the trial court erred by denying his motion for a mistrial due to a news article that appeared during the trial which reported that defendant had rejected a plea bargain, and by denying his alternative requests that the jury be polled to determine whether any juror had been exposed to this article or two other articles that were published during the course of the trial. We disagree.

The presiding judge is vested with broad discretion in matters relating to the conduct of the trial. *State v. Rhodes*, 290 N.C. 16, 224 S.E.2d 631 (1976). This broad discretion includes rulings with respect to making inquiry of jurors to determine whether they may have been influenced or prejudiced by any matters outside the evidence. *State v. Byrd*, 50 N.C. App. 736, 275 S.E.2d 522, *disc. review denied*, 303 N.C. 316, 281 S.E.2d 654 (1981). Likewise, the decision of whether to grant a mistrial rests within the discretion of the trial judge. *State v. Hogan*, 321 N.C. 719, 365 S.E.2d 289 (1988). The scope of our review, then, is whether the trial judge abused his discretion in denying defendant's motions. An abuse of discretion occurs only upon a showing that the judge's ruling was so arbitrary that it could not have been the result of a reasoned decision. *Id.*

No abuse of discretion attended the trial court's rulings with respect to defendant's motions here. The trial court properly admonished the jury throughout the trial to avoid exposure to media accounts of the trial, and there is no hint either in the record or in defendant's argument that the court's instructions were not followed. Thus, neither prejudice nor abuse of discretion has been shown. *See State v. McLaughlin*, 323 N.C. 68, 372 S.E.2d 49 (1988); *Byrd*, 50 N.C. App. 736, 275 S.E.2d 522. These assignments of error are overruled.

**[5]** Defendant assigns error to the denial of an additional motion for a mistrial which he made after William Horton, defendant's supervisor, testified that defendant had told him he had a record. Defendant further claims that the court erred in not individually polling the jury as to whether they heard Horton's statement. We disagree.

At trial, Horton made the following statement: "He [defendant] told me that because he had a record—." Horton's testimony was interrupted and the jury was instructed: "Members of the jury, with regard to the last statement made by this witness, I instruct you to disregard it if you did hear it."

"The law assumes that jurors will follow [a court's] instructions and act in a rational fashion." *State v. Walker*, 319 N.C. 651, 655, 356 S.E.2d 344, 346 (1987) (citations omitted). When a court withdraws incompetent evidence and instructs the jury not to consider it, any prejudice will ordinarily be regarded as harmless. *Id.* The trial court acted promptly and properly in this instance, and its refusal to grant a mistrial or to individually poll jurors was not an abuse of discretion. *Id.*

**[6]** Defendant next contends the trial court erred in overruling his objection to testimony by Sergeant Tice of the Norfolk Police Department concerning statements allegedly made by defendant during a telephone conversation with Sergeant Tice. For a court to allow a witness in a criminal case to testify to the content of a telephone conversation, the identity of the person with whom the witness was speaking must be established. *See State v. Richards*, 294 N.C. 474, 242 S.E.2d 844 (1978). In such cases identity may be established by testimony that the witness recognized the other person's voice, or by circumstantial evidence. *Id.* In the present case, there was sufficient circumstantial evidence to support the trial court's ruling: Chris Jackson, the victim's brother, told Sergeant Tice that defendant could be reached at his parent's home; Sergeant Tice called the residence of defendant's parents and spoke with a male who identified himself as Michael Dial; this person told Sergeant Tice that he had been given Tice's name and number by Chris Jackson and had been meaning to contact him; the same person later called Sergeant Tice back and told him basically the same story concerning the victim's disappearance as Chris Jackson had told police; the person stated that he had been staying at his parent's home since the victim's disappearance; the person related that the victim had had an abortion a few months earlier; and when Sergeant Tice asked the caller about the location of his

**STATE v. DIAL**

[122 N.C. App. 298 (1996)]

truck, the person said he could not speak to police about that without his lawyer. Sergeant Tice's testimony concerning the conversation was properly admitted.

**[7]** Defendant next assigns error to the denial of his motion *in limine* to exclude testimony by Coast Guard Petty Officer Torquato as to prevailing ocean currents from 1 July 1991 to 4 July 1991. Defendant contends the evidence was relevant only to the question of jurisdiction, and that the trial court had, by its earlier rulings, precluded defendant from relitigating that issue. Thus, he argues, the evidence was not relevant to any issue before the jury and should have been excluded. We disagree.

Evidence is relevant and admissible if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.R. Evid. 401, 402. We hold Petty Officer Torquato's testimony as to ocean currents was relevant to show a connection between defendant and the crime in that an inference could be drawn therefrom that the body had drifted from an area with which defendant was familiar, where he and Brenda Dozier had previously camped and fished, and where he had stated an intention to take Ms. Dozier over the 4th of July holiday.

Alternatively, defendant claims the State, by offering Petty Officer Torquato's testimony, "opened the door" to his relitigating the issue of jurisdiction, and that the trial court erred by refusing to allow him "to present his own evidence concerning the location and movement of the body." As noted above, the evidence was admissible, not as to jurisdiction, but as evidence tending to show defendant's connection with the crime. Moreover, there is no indication in the record that defendant made any offer of evidence as to "the location and movement of the body" or that the trial court excluded such evidence. The exclusion of evidence will not be held for error in the absence of a showing of an offer thereof. N.C. Gen. Stat. § 8C-1, Rule 103(a). *State v. Barton*, 335 N.C. 741, 441 S.E.2d 306 (1994). We deem these assignments of error to be without merit.

**[8]** Defendant next assigns error to the denial of his motion to strike certain testimony by Douglas Campbell, a co-worker of defendant. Campbell testified that after seeing a news report that an unidentified body bearing a rose tattoo had washed onto the beach at Nags Head, Campbell had said to his girlfriend, "Mike, he killed his girlfriend." Campbell also testified that he told his employer that he did

not want to work with defendant because he thought defendant had killed Brenda Dozier. Defendant argues that the witness had no foundation for the first statement, and that neither of the statements are relevant.

A lay witness may testify as to opinions or inferences drawn if those opinions or inferences are "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C.R. Evid. 701. Our Supreme Court has held that "out-of-court statements offered to explain the conduct of a witness are relevant and admissible." *State v. Roper*, 328 N.C. 337, 356, 402 S.E.2d 600, 611, *cert. denied*, 502 U.S. 902, 116 L. Ed. 2d 232 (1991) (citing *State v. Potter*, 295 N.C. 126, 132, 244 S.E.2d 397, 401-02 (1978) (witness' testimony as to a threat to her husband admissible to explain her subsequent conduct in calling the police)). Campbell testified that defendant had stated that he and Ms. Dozier had been fighting the whole weekend prior to the murder, and that defendant said he was going to kill the victim if they did not get away from each other. Defendant further stated he was going to chain the victim to the bottom of the ocean. Campbell testified that on 2 July defendant's eyes were bloodshot, he was agitated and edgy, and that he "appeared to have been up all night." Defendant also asked if Campbell could help get some new seats for defendant's truck because of blood on the seats from a fight defendant and the victim allegedly had a couple of weeks earlier. Campbell was aware of the distinctive rose tattoo on Ms. Dozier. Subsequent to the news report, Campbell called the "Crime Line" to report his previous conversation with defendant. Thus, there was a rational basis for Campbell's testimony, and the testimony shows that by his conduct the witness took defendant's statements seriously. For similar reasons, we overrule, without discussion, defendant's eighteenth assignment of error, which is directed to similar testimony by another witness.

**[9]** Defendant next contends the trial court erred in denying his motion *in limine* to preclude Robert Hart's testimony that defendant had told him that "if he were pulled over, that he would take out whoever pulled him over—with him" and that "something had gone south and that he had to off two people." Defendant argues the statements were not relevant and were offered solely to prove that defendant was a person of bad character.

"[E]vidence is relevant if it has any logical tendency, however slight, to prove a fact in issue in the case." *State v. Prevette*, 317 N.C.

148, 162, 345 S.E.2d 159, 168 (1986). In light of other testimony tending to show that Ms. Dozier had expressed fear of defendant because she knew of things he had done, defendant's alleged statements tend to establish a motive for killing her, his intent to elude capture, and also go to the issue of premeditation and deliberation. At defendant's request, the trial court gave the jury a limiting instruction that the testimony was not offered to show defendant's character, but was admissible only for the purpose of "showing motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, entrapment, or accident, if you find that it does so." We find no abuse of discretion in the trial court's denial of defendant's motion *in limine. See Prevette*, 317 N.C. 148, 345 S.E.2d 159 (testimony concerning a defendant's statement that he had "unfinished business" in the area to take care of upon his release from prison held relevant and properly admitted).

By his twenty-fourth and twenty-sixth assignments of error, defendant contends the trial court erred by refusing to dismiss the charge of first degree murder at the close of the State's evidence and at the close of all the evidence. Only the ruling made at the close of all the evidence is subject to review. *State v. Hough*, 299 N.C. 245, 262 S.E.2d 268 (1980). Defendant contends there was an absence of sufficient evidence of premeditation and deliberation to support a conviction of first degree murder. However, defendant was acquitted of first degree murder, having been convicted of the lesser offense of second degree murder. Thus, any error with respect to the submission of the issue of defendant's guilt of first degree murder was rendered harmless, absent some showing that the verdict of guilty of second degree murder was affected thereby. *State v. Berkley*, 56 N.C. App. 163, 287 S.E.2d 445 (1982). Defendant has made no such showing.

We have examined carefully the remaining assignments of error brought forward in defendant's brief and conclude that they are without merit and may be overruled without discussion.

Defendant received a fair trial, free from prejudicial error.

No error.

Judges JOHN and McGEE concur.