STATE OF NORTH CAROLINA v. JAN C. GILBERT

No. COA99-677

(Filed 29 August 2000)

1. **Constitutional Law— standing—constitutional challenge of statute as applied**

    Although N.C.G.S. § 15A-534.1 relating to bail and pretrial release in domestic violence situations does not apply to defendant's second-degree kidnapping charge, defendant has standing to raise a constitutional challenge as to this statute because the statute was applied to defendant.

2. **Constitutional Law— state—domestic violence—kidnapping—bail and pretrial release—due process—double jeopardy**

    N.C.G.S. § 15A-534.1 which relates to bail and pretrial release in domestic violence situations is not facially violative of the North Carolina Constitution's protections relating to due process and double jeopardy because: (1) the North Carolina Supreme Court has previously found this statute did not violate the Fifth and Fourteenth Amendments to the United States Constitution, and the North Carolina Constitution's law of the land clause has

been held equivalent to the Fourteenth Amendment's Due Process Clause; and (2) the double jeopardy guarantees in the United States and North Carolina Constitutions are equivalent, and our Supreme Court has already held that this statute survives a facial constitutional challenge on double jeopardy grounds under the United States Constitution.

**3. Constitutional Law— due process—bail and pretrial release—domestic violence—kidnapping—no delay in post-detention process**

The magistrate did not unconstitutionally delay the post-detention process in a kidnapping case to which defendant was entitled under the due process clause of the Fifth Amendment and Article I, Section 19 of the North Carolina Constitution by its application in this case of N.C.G.S. § 15A-534.1 which relates to bail and pretrial release in domestic violence situations, because: (1) there is no evidence that an arbitrary limit was placed on the time defendant would be held in detention before seeing a judge; (2) defendant was taken into custody and the magistrate ordered that defendant be taken before a judge at the first opportunity; and (3) defendant was brought before a judge as soon as one was available.

**4. Bail and Pretrial Release— domestic violence—kidnapping—conditions**

The trial court's order requiring defendant to remain in custody until 2:00 p.m. for a kidnapping charge was not an unconstitutional application of N.C.G.S. § 15A-534.1, which relates to bail and pretrial release in domestic violence situations, because: (1) a judge conducting a hearing under N.C.G.S. § 15A-534.1 may retain defendant in custody for a reasonable period of time beyond the initial forty-eight hours authorized by the statute if the judge determines that release of defendant will pose a danger of injury to the alleged victim; and (2) the approximately five additional hours of detention ordered by the trial court were not unreasonable.

**5. Constitutional Law— double jeopardy—bail and pretrial release—domestic violence—kidnapping**

The trial court did not violate defendant's right to be free from double jeopardy when it applied N.C.G.S. § 15A-534.1 which relates to bail and pretrial release in domestic violence situations to defendant's kidnapping case, because: (1) defendant's deten-

STATE v. GILBERT

[139 N.C. App. 657 (2000)]

tion was only to await hearing before the first available judge; and (2) the judge's order requiring defendant to remain in custody until 2:00 p.m. was merely a condition of defendant's release.

### 6. Kidnapping— motion to dismiss—no written findings of fact required

The trial court did not err by denying defendant's motion to dismiss a kidnapping charge even though the trial court did not make any written findings of fact concerning defendant's pretrial release, because while a judge is permitted to make certain determinations under N.C.G.S. § 15A-534.1, there is no requirement that there be any written record of those determinations.

### 7. Criminal Law— motion for a mistrial—kidnapping—verdict sheet—caption in name of a different defendant

The trial court did not commit plain error by denying defendant's motion for a mistrial in a kidnapping case after discovering that the jury had returned a verdict on a verdict sheet that was captioned in the name of a different defendant, because: (1) the verdict sheet lists the proper file number for the case; (2) the proper charges listed are consistent with the evidence presented at trial and with the trial court's instructions; (3) the transcript and exhibits are replete with reference to defendant by his proper name; and (4) after the verdict was returned, the jury was polled and each juror affirmed his or her vote that defendant was guilty.

### 8. Criminal Law— motion for a mistrial—kidnapping—juror's post-conviction doubts about accuracy of verdict

The trial court did not commit plain error by denying defendant's motion for a mistrial in a kidnapping case when a juror raised doubts about the accuracy of the verdict, because: (1) a juror's post-conviction doubts about a verdict are insufficient to impeach a defendant's verdict; (2) when the jury was polled upon the original return of the verdict, all jurors assented the guilty verdict against defendant; and (3) the trial court could have amended the verdict without reconvening the jury to make the verdict sheet conform to the intentions of the jury.

Appeal by defendant from judgment entered 3 March 1999 by Judge J. Richard Parker in Pitt County Superior Court. Heard in the Court of Appeals 18 April 2000.

*Michael F. Easley, Attorney General, by Amy C. Kunstling, Assistant Attorney General, for the State.*

*Robert L. Shoffner, Jr., Public Defender, by James Kevin Antinore, Assistant Public Defender, for defendant-appellant.*

EDMUNDS, Judge.

Defendant Jan C. Gilbert appeals from jury verdicts finding him guilty of second-degree kidnapping and assault on a female. We find defendant's conviction to be free from prejudicial error.

Defendant's challenges focus on the procedures followed in his case. On Saturday, 27 September 1997, defendant was arrested for assault on a female and assault by pointing a gun and was held pursuant to N.C. Gen. Stat. § 15A-534.1 (1995). On the morning of Monday, 29 September 1997, defendant appeared before a district court judge and was released on bond. Thereafter, on 30 October 1997, defendant was arrested for second-degree kidnapping, a charge predicated on the same incident that led to the earlier assault charges. Defendant was received at the detention facility at 9:14 p.m. on 30 October 1997 and was held pursuant to section 15A-534.1. A hearing was set for 9:00 a.m. the next morning. At that hearing, defendant appeared before a district court judge, who ordered that defendant be released on an unsecured bond, but only after 2:00 p.m. that afternoon.

Prior to trial, defendant moved to dismiss the charge of second-degree kidnapping, on the grounds that section 15A-534.1 does not apply to kidnapping charges and that his detention from 9:14 p.m. on 30 October 1997 to 2:00 p.m. on 31 October 1997 violated his due process and double jeopardy constitutional rights. The trial court denied defendant's motion, and the case proceeded to trial.

The State presented evidence that defendant had been involved in a five-year, extra-marital affair with the victim and had fathered the victim's two children. When the victim told defendant in February or March 1997 that she wanted to end their affair, he replied that she would not get out of the relationship alive, fired a gun at her, and told her the shot was a warning and that next time he would not miss. During the following six or seven months, the victim repeatedly told defendant that she wanted to end their relationship. Defendant always responded by telling the victim that she would not get out of the relationship alive and that "[h]e would fix [her] for the next man."

**STATE v. GILBERT**

[139 N.C. App. 657 (2000)]

On 25 September 1997, defendant came to the victim's trailer at around 4:30 p.m., where he drank and watched television. A friend of the victim twice stopped by to ask the victim to come play cards with her. The victim declined, saying that she did not want to upset defendant. When the friend told defendant that she wanted the victim to come play cards, defendant responded that the victim was not leaving and that he would shoot the friend and her brother, Malcolm Tyson (Tyson), if defendant discovered that the victim had been seeing Tyson. After the friend departed, defendant started beating the victim. He pushed her onto a couch, sat on top of her, and hit her in her head and stomach. Defendant told the victim he would kill her if he found out that she was seeing anyone else, then pulled the victim onto another couch, pinned her arms behind her, and continued beating her. The victim testified that at some point during the assault, defendant put a gun to the back of her head. He showed her a bullet and said that it had a hollow point and would tear up her insides. The victim tried to leave the trailer but was restrained by defendant.

The victim finally was able to leave her trailer the next morning, after defendant departed. She testified that she suffered a bruised eye, a bruise under her nose, a scratch on her nose, and that some of her fingernails had been pulled off at the roots during the struggle. The victim went to her friend's home, where she told Tyson that defendant had beaten her. The victim's mother took her to the magistrate's office to swear out a warrant against defendant and then to the hospital emergency room.

Defendant testified that he went to the victim's trailer at around 9:30 p.m. on the evening in question. The victim was smoking marijuana and acting "out of it." Her friend came by the trailer twice. When the victim saw a photograph of defendant's wife in his wallet, she tried to grab the wallet to tear up the photograph. The victim bit defendant's forearm in an attempt to retrieve the photograph, then fell against the side of the couch, hurting her shoulder. According to defendant, the victim began crying, then "all of a sudden she just grabbed herself, took her hands and just hit herself right in the face." Defendant grabbed the victim's forearm until she calmed down. He denied ever pointing a gun at the victim.

Defendant's wife testified that defendant came home around 2:30 a.m. on 26 September 1997, showed her an injury on his arm, and told her that the victim had bitten him. She acknowledged that she had obtained a restraining order against defendant in October 1997, claiming that defendant threatened to kill her and tormented her one

night. She testified, however, that she lied when she sought the restraining order.

The jury found defendant guilty of second-degree kidnapping and assault on a female and not guilty of assault by pointing a gun. The trial court consolidated defendant's convictions and sentenced him to a term of imprisonment of twenty-nine to forty-four months. After the jury was excused, the trial court discovered that the wrong defendant's name was printed at the top of the verdict form. Defendant made a motion for a mistrial, which the trial court denied. The trial court ordered the jury to return the next day, at which time the jury foreman signed and dated a corrected jury verdict sheet. As the corrected verdict sheet was passed to the other jurors, one juror advised the court, "I find myself having reasonable doubt about the verdict we passed. Is it too late to say that since we're reviewing this now?" The trial court responded that it was too late to change the verdict. Defendant renewed his motion for a mistrial, which again was denied. The trial court readopted the sentence and appellate entries. Defendant appeals.

I.

Defendant first contends the trial court erred by denying his pre-trial motion to dismiss the charge of second-degree kidnapping. He argues that, because he was illegally held without bond after his arrest, he was denied his constitutional due process rights and his protections against double jeopardy.

A trial court's authority to dismiss charges against a criminal defendant is governed by N.C. Gen. Stat. § 15A-954 (1999), which states in pertinent part:

(a) The court on motion of the defendant must dismiss the charges stated in a criminal pleading if it determines that:

(1) The statute alleged to have been violated is unconstitutional on its face or as applied to the defendant.

. . . .

(4) The defendant's constitutional rights have been flagrantly violated and there is such irreparable prejudice to the defendant's preparation of his case that there is no remedy but to dismiss the prosecution.

STATE v. GILBERT

[139 N.C. App. 657 (2000)]

The Release Order that was filled out when defendant was arrested on 30 October 1997 and held overnight contains a handwritten notation citing "15A-534.1," which apparently was added by the magistrate who completed the form that evening. Section 15A-534.1 applies to a defendant "charged with assault on or communicating a threat to . . . a person with whom the defendant lives or has lived as if married," N.C. Gen. Stat. § 15A-534.1(a), and states that such "[a] defendant may be retained in custody not more than 48 hours from the time of arrest without a determination being made under this section by a judge," *id.* § 15A-534.1(b). Therefore, section 15A-534.1 applied to defendant's 27 September 1997 arrest for assault on the victim, but not to his 30 October 1997 arrest for kidnapping.

Defendant argued that "the magistrate's and district court judge's failure to set pretrial release conditions from 9:14 p.m. on October 30, 1997 to 2:00 p.m. on October 31, 1997 resulted in defendant's illegal incarceration." Consequently, defendant continued, the illegal incarceration resulting from defendant's second arrest arising out of the same incident "created an improper infringement upon defendant's liberty interests and constituted a sufficient violation of defendant's state and federal constitutional Due Process rights, his protections from Double Jeopardy, and his statutory rights under N.C.G.S. [§] 15[A]-954(a)(4) to dictate that the charge of Second Degree Kidnapping be dismissed." At the conclusion of the hearing, the trial court made the following findings of fact:

> [T]he defendant was arrested on a charge of second-degree kidnapping according to the release order which has been marked for identification as Defendant's Exhibit 3 at 9:14 p.m., on the 30th day of October 1997; that the defendant was taken before a magistrate, whose name I could not discern, and was held without bond pursuant to 15A-534.1; that the defendant was subsequently taken before District Court Judge James Martin on the morning of October 31st, 1997, at which time Judge Martin set conditions of release, including the condition that the defendant be released upon giving unsecured bond in the amount of $1,000 to be effective at 2 p.m. on the 31st day of October, 1997, and that the defendant was released at that time.
>
> . . . .
>
> And that the defendant was held without bond for a period of less than 24 hours prior to his release from jail.

Based upon these findings, the trial court concluded:

> [T]he magistrate who initially processed the defendant pursuant to G.S. 15A-534.1 mistakenly believed that second-degree kidnapping was one of the offenses covered by said statute and was of the opinion that he would not be in a position to set a bond without the defendant appearing before a judge as required by G.S. 15A-534.1; that the defendant subsequently appeared before a district court judge on the morning of October 31, 1997, and, according to Defendant's Exhibit 3 was released upon an unsecured bond at 2 p.m. on that same date; that the Court cannot discern why Judge Martin made the effective release of the defendant at 2 p.m. rather than some other time, but can only speculate that Judge Martin was also of the opinion that General Statute 15A-534.1 applied to the second-degree kidnapping; that although the defendant was held in custody from 9:14 p.m. on the 30th day of October 1997 until 2 p.m. on the 31st day of October 1997, upon the mistaken belief that General Statute 15A-534.1 applied to the second-degree kidnapping charges, the defendant has not shown that his constitutional rights have been violated resulting in irreparable prejudice as required by G.S. 15A-954(a)(4).

Accordingly, the trial court denied defendant's motion.

However, the trial court did not rule specifically on the constitutionality of section 15A-534.1; instead, it ruled only that "the defendant has not shown that his constitutional rights have been violated resulting in irreparable prejudice as required by G.S. 15A-954(a)(4)." Defendant argued double jeopardy during the hearing on his motion to dismiss, and after the trial court recited its findings of fact and conclusions of law, defense counsel requested additional findings regarding defendant's claim of double jeopardy. The trial court refused to make the additional findings and noted defendant's objection. Defendant now contends the trial court erred because it "failed to use the proper standard when it based its ruling solely on the 'irreparable prejudice' standard of 15A-954(a)(4)."

Defendant does not assign error to the trial court's conclusion based upon section 15A-954(a)(4), and thus we do not address that issue. Instead, we turn to whether the trial court's failure to address defendant's constitutional challenges (pursuant to section 15A-954(a)(1)) resulted in prejudicial error.

A.

**[1]** We first address defendant's standing to raise a constitutional challenge to section 15A-534.1. The State contends that "[b]ecause § 15A-534.1 does not apply to the kidnapping charge, this Court need not decide defendant's facial and 'as applied' due process and double jeopardy challenges to § 15A-534.1." However, the statute at issue was applied to defendant, whether improperly or not, and we therefore believe that defendant now has standing to challenge its constitutionality in that application. *See Messer v. Town of Chapel Hill,* 346 N.C. 259, 260, 485 S.E.2d 269, 270 (1997) (per curiam) (" 'Standing to challenge the constitutionality of a legislative enactment exists where the litigant has suffered, or is likely to suffer, a direct injury as a result of the law's enforcement.' "); *State v. Fredell,* 283 N.C. 242, 247, 195 S.E.2d 300, 304 (1973) ("Uniformly, the accused has been permitted to assert the invalidity of the law only upon a showing that his rights were adversely affected by the particular feature of the statute alleged to be in conflict with the Constitution.").

B.

**[2]** Defendant asks this Court to find that section 15A-534.1 is facially violative of the North Carolina Constitution's protections relating to due process and double jeopardy. Our Supreme Court recently addressed this issue with regard to the Fifth and Fourteenth Amendments to the United States Constitution and found the statute to be valid. *See State v. Thompson,* 349 N.C. 483, 508 S.E.2d 277 (1998). Defendant's arguments relating to the North Carolina Constitution focus on the "due process" aspects of the case. However, because our Constitution's "law of the land" clause (N.C. Const. art. I, § 19) has been held equivalent to the Fourteenth Amendment's Due Process Clause, *see State v. Collins,* 169 N.C. 323, 84 S.E. 1049 (1915); *Buchanan v. Hight,* 133 N.C. App. 299, 515 S.E.2d 225, *disc. review denied,* 351 N.C. 351, 539 S.E.2d 280 (1999), we believe that our Supreme Court's holding in *Thompson* is controlling. Therefore, we hold that section 15A-534.1 does not violate the North Carolina Constitution on due process grounds.

Defendant also claims he was subjected to double jeopardy, in violation of our state constitution. A defendant in North Carolina is protected against double jeopardy through the "law of the land" provision of the state constitution. *See State v. Crocker,* 239 N.C. 446, 80 S.E.2d 243 (1954). In a criminal jury case in North Carolina, "jeopardy attaches when a defendant in a criminal prosecution is placed on

trial: (1) On a valid indictment or information, (2) before a court of competent jurisdiction, (3) after arraignment, (4) after plea, and (5) when a competent jury has been empaneled and sworn to make true deliverance in the case." *State v. Bell*, 205 N.C. 225, 228, 171 S.E. 50, 52 (1933) (citation omitted). Similarly, under federal law, jeopardy in a criminal jury trial attaches when the jury is empaneled and sworn. *See United States v. Martin Linen Supply Co.*, 430 U.S. 564, 51 L. Ed. 2d 642 (1977); *Downum v. United States*, 372 U.S. 734, 10 L. Ed. 2d 100 (1963). Because the key factor for determining jeopardy—the empaneling and swearing of the jury—is the same in both systems, it does not appear to us that the state constitution grants any greater rights than those provided by the federal constitution. Accordingly, we hold that the double jeopardy guarantees in the United States and North Carolina constitutions are equivalent. Therefore, consistent with our Supreme Court's holding in *Thompson*, we hold that section 15A-534.1 "survives defendant's facial constitutional challenge on double-jeopardy grounds." *Thompson*, 349 N.C. at 496, 508 S.E.2d at 285.

## C.

[3] Defendant also contends section 15A-534.1, as applied in this case, violated defendant's state and federal constitutional rights. Defendant argues that "the magistrate unconstitutionally delayed the post-detention process to which defendant was entitled under the Due Process Clause of the Fifth Amendment and Article I, Sec. 19 of our state's Constitution." As noted above, when defendant was brought before the magistrate at 9:14 p.m. on 30 October 1997, the magistrate ordered defendant held without bond until 9:00 a.m. the next day and noted "15A-534.1" on the Release Order. Defendant was brought before a judge the next morning, and conditions of release were established (permitting defendant's release at 2:00 p.m. upon payment of an unsecured bond).

Turning first to defendant's due process concerns as they relate to the delay in receiving a bond hearing, we have found only two cases that have discussed the "as applied" constitutionality of section 15A-534.1. In *Thompson*, 349 N.C. 483, 508 S.E.2d 277, the defendant was arrested at 3:45 p.m. on a Saturday. The magistrate's order of commitment did not authorize the defendant's release from jail for a bond hearing until 3:45 p.m. the following Monday, forty-eight hours later. In accordance with this order, the defendant was held until Monday afternoon, instead of being brought into court before a judge

at the start of court on Monday. The Supreme Court held that this delay of approximately six hours and forty-five minutes was "unnecessary, unreasonable, and thus constitutionally impermissible." *Thompson*, 349 N.C. at 500, 508 S.E.2d at 288. In so holding, the Court looked at the following factors:

> "[T]he importance of the private interest and the harm to this interest occasioned by delay; the justification offered by the Government for delay and its relation to the underlying governmental interest; and the likelihood that the interim decision may have been mistaken."

*Id.* at 499, 508 S.E.2d at 287 (quoting *FDIC v. Mallen*, 486 U.S. 230, 242, 100 L. Ed. 2d 265, 279 (1988)). Applying these factors to the facts before the Court, the *Thompson* Court stated: ·

> [I]t is beyond question that the private interest at stake, liberty, is a fundamental right. "Th[e] traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction." . . .

> Delay in post-deprivation judicial review under N.C.G.S. § 15A-534.1(b) may result in significant harm to a defendant's private interest in liberty prior to trial. . . .

> . . . The State has a legitimate interest in providing that a legally trained judge perform individualized determinations of bail and set conditions of release in domestic-violence cases. The State, however, also claims a corollary interest in detaining a domestic-violence arrestee while securing a judge to perform this function. . . . Here, once a judge became available to conduct a post-detention hearing on Monday morning, further delay in providing this hearing did not serve any underlying interest of the State. All such interests had been served in full. . . .

> . . . .

> Th[e] "cooling off" justification for detaining a domestic-violence arrestee beyond the time at which a judge is available to consider the conditions of that arrestee's pretrial release has no relationship to the State's interest in having a judge, rather than a magistrate, conduct domestic-violence, pretrial-release hearings under N.C.G.S. § 15A-534.1(b). . . .

> . . . .

We now consider the final *FDIC* factor: "the likelihood that the interim decision [to detain defendant] may have been mistaken." A first magistrate determined that there was probable cause to arrest defendant on a domestic-violence charge based upon the allegations of one individual. A second magistrate ordered defendant detained based solely upon that probable-cause determination. When his case came to trial, defendant pled not guilty and asserted that he did not commit a crime of domestic violence. There is no record evidence establishing definitively whether detention was warranted.

*Id.* at 499-502, 508 S.E.2d at 287-88 (internal citations omitted) (second and last alterations in original). Accordingly, the Supreme Court reversed the decision of this Court and remanded for further remand for entry of an order of dismissal. *See id.* at 503, 508 S.E.2d at 289.

The second case, *State v. Malette*, 350 N.C. 52, 509 S.E.2d 776 (1999), distinguished *Thompson*. In *Malette*, the defendant was arrested on 3 December 1995 and was taken before a magistrate on that date. The magistrate ordered that the defendant be held pursuant to section 15A-534.1, and on 4 December 1995, the defendant was taken before a district court judge, who set a secured bond of $10,000. On 7 December 1995, the State and defense counsel agreed to a secured bond of $1,000 on the condition that the defendant have no contact with the victim. The defendant was then released. When his case was called for trial, the defendant moved to dismiss the charge on constitutional grounds. The trial court granted the defendant's motion, and the State appealed to superior court, which found the statute constitutional and remanded the case for trial. This Court affirmed. Our Supreme Court affirmed this Court's decision, stating the following:

In the case *sub judice*, the record does not indicate that there was unreasonable delay in holding the post-detention hearing. On Sunday, 3 December 1995, defendant was arrested and taken before a magistrate who ordered that he be brought before a judge pursuant to N.C.G.S. § 15A-534.1(b) on the very next day, Monday, 4 December 1995. Defendant was in fact brought before District Court Judge Carolyn Johnson on Monday, 4 December 1995, and she set a secured bond of $10,000, which subsequently was reduced to $1,000. There is no evidence here that the magistrate arbitrarily set a forty-eight-hour limit as in *Thompson* or that the State did not move expeditiously in bringing defendant before a judge.

*Id.* at 55, 509 S.E.2d at 778. Accordingly, the statute was constitutional as applied to the defendant in *Malette*.

We believe that the case at bar is determined by *Malette*. As in *Malette*, and unlike *Thompson*, there is no evidence here that an arbitrary limit was placed on the time defendant would be held in detention before seeing a judge. Defendant was taken into custody on the evening of 30 October 1997, and the magistrate ordered that he be taken before a judge at the first opportunity. Accordingly, defendant was presented to a district court judge at the start of court the next day, 31 October 1997. At that point, the judge determined conditions of release; defendant was to be detained until 2:00 p.m. that afternoon, at which time defendant could be released upon a $1,000 unsecured bond. Because defendant was brought before a judge as soon as one was available, defendant was heard " 'at a meaningful time and in a meaningful manner.' " *Thompson*, 349 N.C. at 503, 508 S.E.2d at 289 (citation omitted). The delay in receiving a bond hearing did not violate defendant's due process rights. *See State v. Jenkins*, 137 N.C. App. 367, 527 S.E.2d 672, *disc. review denied*, 352 N.C. 153, —— S.E.2d —— (2000).

**[4]** We next address defendant's contention that the district court judge's order requiring defendant to remain in custody until 2:00 that afternoon was an unconstitutional application of section 15A-534.1. Assuming that the judge was applying section 15A-534.1(a) when he delayed defendant's release, our Supreme Court in *Thompson* stated that such a delay by a judge is permissible. "A judge conducting [a hearing pursuant to section 15A-534.1] 'may retain the defendant in custody for a reasonable period of time' beyond the initial forty-eight hours authorized by N.C.G.S. § 15A-534.1(b) if the judge determines that 'release of the defendant will pose a danger of injury to the alleged victim.' " *Thompson*, 349 N.C. at 501, 508 S.E.2d at 288 (quoting N.C. Gen. Stat. § 15A-534.1(a)). The approximately five additional hours of detention ordered by the trial court were not unreasonable.

D.

**[5]** Although no case has addressed whether section 15A-534.1 violates a defendant's right to be free from double-jeopardy on an "as applied" basis, the *Thompson* Court did state:

[W]hen an individual arrested upon an allegation of domestic violence undergoes regulatory detention under N.C.G.S. § 15A-534.1(b) for a brief period of time while awaiting the first

available judge to hold a pretrial release hearing under N.C.G.S. § 15A-534.1(a), no double-jeopardy concern arises.

349 N.C. at 496, 508 S.E.2d at 284-85. Accordingly, because the detention was only to await hearing before the "first available judge," defendant was not exposed to double jeopardy for the kidnapping charge. Similarly, we hold that the judge's order requiring defendant to remain in custody until 2:00 p.m. as a condition of defendant's release pursuant to section 15A-534.1(a) does not give rise to double jeopardy.

In light of our preceding analysis, any error by the trial court in not directly addressing the constitutionality of the statute was harmless. Defendant's constitutional assignments of error are overruled.

II.

[6] Alternatively, defendant contends that the trial court erred by denying his motion to dismiss based on the district court judge's failure to make findings of fact. Section 15A-534.1(a)(1) and (b) speak of different determinations that may be made by the court. However, the statute sets forth no requirement that the judge make findings of fact to support any of these determinations.

We considered an analogous situation in *State v. O'Neal*, 108 N.C. App. 661, 424 S.E.2d 680 (1993), where we analyzed N.C. Gen. Stat. § 15A-534 (1992) (procedure for determining conditions of pre-trial release). Section 15A-534 required the judicial official to consider:

> the nature and circumstances of the offense charged; the weight of the evidence against the defendant; the defendant's family ties, employment, financial resources, character, and mental condition; whether the defendant is intoxicated to such a degree that he would be endangered by being released without supervision; the length of his residence in the community; his record of convictions; his history of flight to avoid prosecution or failure to appear at court proceedings; and any other evidence relevant to the issue of pretrial release.

In *O'Neal*, we stated:

> While it is clear from the statute that the judicial official imposing pretrial release must consider these factors, it is less certain what record he must make of his considerations. In *State v. Knoll*, 322 N.C. 535, 369 S.E.2d 558 (1988), the record appears to have contained specific findings of fact by the trial court regard-

STATE v. GILBERT

[139 N.C. App. 657 (2000)]

ing the conduct of the magistrate in setting bail. Based on these findings, our Supreme Court concluded that the statute had been violated to the detriment of the defendants. *Id.* at 545-47, 369 S.E.2d at 564-65. This Court, in *State v. Overton*, 60 N.C. App. 1, 298 S.E.2d 695 (1982), . . . noted that the judicial official determining the conditions of pretrial release was required to consider the factors in N.C. Gen. Stat. § 15A-534(c), but made no indication that a *written* record of that consideration existed, nor that the lack of such a writing would warrant the conclusion that the factors had not been properly considered. *Id.* at 32-33, 298 S.E.2d at 714 (based on the statutory factors, $1 million bail was not unreasonable for conspiracy to manufacture, to sell or deliver, or to possess heroin).

. . . .

The defendant in the present case correctly asserts that the record is devoid of any written findings regarding the imposition of the secured bond, and there is no indication that the trial judge considered the factors in N.C. Gen. Stat. § 15A-534(c) when he established the conditions of the defendant's pre-trial release. . . . [S]ection 15A-534(c) requires the judicial official to consider the factors listed but does not require him to keep a written record of such consideration. We are, therefore, not willing to conclude, as the defendant contends, that the absence of such findings in the record indicates noncompliance with the statute. . . . Neither the transcript from [the pretrial] hearing, nor anything else in the record, indicates that the judge *did not* consider the appropriate factors in either the initial establishment of the bond, in the later modification, or in subsequent refusals to modify. Absent some evidence to the contrary from the defendant, we must conclude that the law relating to pretrial release was properly applied to him.

108 N.C. App. at 664-65, 424 S.E.2d at 682.

A similar analysis applies to the case at bar. While the judge is permitted to make certain determinations under the statute, there is no requirement that there be any written record of those determinations. Following the language of *O'Neal*, "[a]bsent some evidence to the contrary from the defendant, we must conclude that the law relating to pretrial release was properly applied to him." *Id.* at 665, 424 S.E.2d at 682. Accordingly, this argument is without merit.

### III.

[7] Defendant's next argument is that the trial court erred in denying his motion for a mistrial after discovering that the jury had returned a verdict on a verdict sheet that was captioned in the name of a different defendant. He concedes that "[he] has no case law to present the Court in support of this assignment," but nevertheless "contends that State and Federal Due Process protections and concepts of Fundamental Fairness dictate that a man should not be sentenced to prison by a judgment that is based upon a verdict sheet that does not even have the defendant's name on it."

We review denials of motions for mistrial under an abuse of discretion standard. *See State v. Dial*, 122 N.C. App. 298, 308, 470 S.E.2d 84, 90 (1996). "An abuse of discretion occurs only upon a showing that the judge's ruling was so arbitrary that it could not have been the result of a reasoned decision." *Id.* at 308, 470 S.E.2d at 91 (citation omitted).

We begin by reviewing the action taken by the trial court. Upon discovering the error in the verdict sheet, the trial court stated the following:

Let me put this in the record. It has come to my attention that . . . [t]he verdict sheet in the case of State of North Carolina versus Jan C. Gilbert was incorrectly prepared and shows the name of the defendant being Russell Edward Manning. The Court did not catch the error prior to submitting the verdict sheet to the jury; that the verdict sheet was prepared by the court reporter from her computer which obviously had the wrong defendant's name contained thereon. This is a typographical error as far as the Court is concerned, not detected by the clerk of court while she polled the jury and only after the sentence was invoked and the jury left the courtroom, did it come to the attention of the presiding judge of the name of the defendant on the verdict sheet.

When the trial court inquired of the parties, "[b]efore sending the verdict sheet to the jury to allow them to begin their deliberations, are there any requests, corrections or additions to the charge[?]," no objections were tendered; in fact, no one noticed the discrepancy until after the jury had been released. Absent such a timely objection to the error, *see Tin Originals, Inc. v. Colonial Tin Works, Inc.*, 98 N.C. App. 663, 667, 391 S.E.2d 831, 833 (1990), our review is limited to plain error.

Although we agree with defendant that there is no case law on point with regard to this issue, we are not without guidance in our analysis. First, N.C. Gen. Stat. § 15A-1237(a), (b) (1999) establishes that a verdict must be (1) in writing, (2) signed by the foreman, (3) made a part of the record in the case, (4) unanimous, and (5) returned by the jury in open court. We interpreted this section in *State v. Sanderson*, 62 N.C. App. 520, 302 S.E.2d 899 (1983). In *Sanderson*, where the defendant challenged the sufficiency of the verdict, we stated:

> [S]ection [15A-1237] is intended to aid the trial court in avoiding the taking of verdicts which are flawed by the inadvertent omission of some essential element of the verdict itself when given orally. A verdict form is sufficient for this purpose if it provides the court a proper basis upon which to pass judgment and sentence the defendant appropriately.

*Id.* at 524, 302 S.E.2d at 902 (internal citations omitted). Accordingly, in determining whether there was error in the failure to include an essential element of a drug violation, we stated:

> When the indictments, the court's charge, and the verdict form are considered together, we believe (1) that it can be inferred that the jury found the [omitted] element . . . and (2) that the form itself, although improperly omitting that element, sufficiently identified the offenses found by the jury to enable the court to pass judgment on the verdict and sentence defendant appropriately.

*Id.*

Second, in *State v. McCoy*, 105 N.C. App. 686, 414 S.E.2d 392 (1992), this Court found no prejudicial error when the jury sheet called upon the jury to determine whether the defendant was guilty of trafficking in 28 to 400 grams of cocaine, when the defendant was actually charged with trafficking a 28- to 200-gram quantity. We held that because "the record shows this discrepancy was merely a clerical error," the error "had no resulting prejudice since the evidence before the jury clearly indicated defendant possessed and transported 38 grams of cocaine." *Id.* at 691, 414 S.E.2d at 395.

Finally, a brief survey of other jurisdictions shows that unless the error is fundamental, *see Pittman v. State*, 621 So. 2d 351 (Ala. Crim. App. 1992) (holding that verdict form submitting a crime of "intent to commit murder" as opposed to "attempted murder" was insufficient

to bestow upon the trial court jurisdiction to pronounce judgment); *Com. v. DeHart*, 650 A.2d 38 (Pa. 1994) (holding that language requiring the jury to weigh "one aggravating circumstance" against "any mitigating circumstance" instead of "mitigating circumstances" may have led to an "improper weighing process" and thus remanding for new sentencing), errors will not be considered prejudicial, *see Lyons v. State*, 690 So. 2d 695 (Fla. Dist. Ct. App. 1997) (finding no prejudicial error in verdict form that listed "Conspiracy to Commit Robbery" instead of "conspiracy to commit armed robbery or robbery with a dangerous weapon" because error was merely "a typographical oversight" and jury was properly instructed); *Broadus v. State*, 487 N.E.2d 1298 (Ind. 1986) (holding that error in indicating burglary instead of robbery on verdict sheet was harmless where jury was well-acquainted with crime charged, instructions repeatedly referred to robbery, and jury polled after verdict); *Lindsey Masonry Co. v. Jenkins & Assoc.*, 897 S.W.2d 6 (Mo. Ct. App. 1995) (finding no error when typographical error on one of three verdict sheets inverted the parties to read, "On the claim of defendant Jenkins and Associates[,] Inc. against plaintiff Lindsey Masonry Company, Inc.," instead of "On the claim of [p]laintiff Lindsey Masonry[,] Inc. against defendant Jenkins & Associates, Inc.").

In the case at bar, the verdict sheet lists the proper file number for the case, and the proper charges listed are consistent with the evidence presented at trial and with the court's instructions. The transcript and exhibits are replete with references to defendant by name, Jan C. Gilbert. After the verdict was returned, the jury was polled, and each juror affirmed his or her vote that defendant was guilty. We do not perceive that the error in the verdict form resulted in any prejudice to defendant. This assignment of error is overruled.

IV.

[8] Finally, defendant contends the trial court erred in denying defendant's motion for a mistrial when a juror raised doubts about the accuracy of the verdict. After the jury returned its verdict and defendant was sentenced, the trial court realized the error in the verdict sheet. To rectify the discrepancy, the trial court reconvened the jury the next morning and explained the error on the verdict sheet. The trial court then directed the foreman, "if [he] deem[ed] appropriate," to conform the amended verdict sheet to the original verdict sheet. The court had the amended verdict sheet passed to the other jurors. We commend the trial judge for his diligence in

addressing the error in the verdict form. Nevertheless, as if to prove Murphy's Law, one juror stated while the corrected form was being circulated: "I find myself having reasonable doubt about the verdict we passed. Is it too late to say that since we're reviewing this now?" The trial court said, "Yes, ma'am," then noted the juror's concerns for the record. Defendant renewed his motion for a mistrial, which again was denied.

It has long been the law of this state that a juror's post-conviction doubts about a verdict are insufficient to impeach a defendant's verdict. *See, e.g., State v. Black*, 328 N.C. 191, 400 S.E.2d 398 (1991). When the jury was polled upon the original return of the verdict, all jurors assented the guilty verdict against defendant.

> The purpose of polling the jury is to ensure that the jurors unanimously agree with and consent to the verdict at the time it is rendered. If the jury is unanimous at the time the verdict is returned, the fact that some of them change their minds at any time thereafter is of no consequence; the verdict rendered remains valid and must be upheld.

*Id.* at 198, 400 S.E.2d at 402 (internal citations omitted). The trial court could have amended the verdict without reconvening the jury to make the verdict sheet conform to the intentions of the jury. *See Cox v. R.R.*, 149 N.C. 86, 88, 62 S.E. 761, 762 (1908) (" 'From the earliest period the courts have freely exercised the power of amending verdicts so as to correct manifest errors, both of form and of substance, to make them conform to the intention of the jury.' "). The trial court's scrupulousness in having the corrected verdict form signed by the foreperson of the recalled jury and in allowing the jurors to view the corrected form did not change the general rule (subject to statutory exceptions) that a juror may not impeach his or her own verdict. *See* N.C. Gen. Stat. § 15A-1240 (1999); *State v. Carter*, 55 N.C. App. 192, 284 S.E.2d 733 (1981). This assignment of error is overruled.

No error.

Judges GREENE and McGEE concur.